UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

IVOCLAR VIVADENT AG, and
IVOCLAR VIVADENT, INC.

          Plaintiffs,

v.                                    Civil No. 17-cv-250

JERSEY DENTAL SUPPLIES, LLC,

          Defendant.

---

# COMPLAINT

Ivoclar Vivadent AG ("Ivoclar AG") and Ivoclar Vivadent, Inc. ("Ivoclar Inc.") (collectively, the "Plaintiffs"), for their Complaint against Jersey Dental Supplies, LLC ("Jersey Dental"), allege as follows:

## THE PARTIES

1. Ivoclar AG is a Liechtenstein company with a principal place of business at Bendererstrasse 2, 9494 Schaan, Liechtenstein. It is a leading developer and supplier of dental products around the world.

2. Ivoclar Inc., a wholly-owned subsidiary of Ivoclar AG, is a Delaware corporation with a principal place of business at 175 Pineview Drive, Amherst, NY 14228. Ivoclar Inc. is a leading developer and supplier of dental products.

3. Upon information and belief, Jersey Dental is a New Jersey limited liability company, with a principal place of business at 644 Cross Street, Lakewood, N.J. 08701.

Jersey Dental markets, offers for sale, sells, and distributes certain dental products throughout the United States, including in New York.

## JURISDICTION AND VENUE

4.  This is a trademark and patent infringement action brought under the trademark laws of the United States, including 15 U.S.C. Sections 1114, 1121(a), and 1125(a), and the patent laws of the United States, 35 U.S.C. Section 101, *et seq.*, including 35 U.S.C. Section 271.

5.  Ivoclar Inc. seeks damages for trademark infringement and an injunction precluding Jersey Dental from using and infringing Ivoclar Inc.'s trademarks. The Plaintiffs also seek damages for patent infringement and an injunction precluding Jersey Dental from making, using, selling, or offering to sell, and from inducing others to make, use, sell, or offer to sell, the Plaintiffs' patented technology.

6.  This Court has subject matter jurisdiction under 28 U.S.C. Sections 1331 and 1338(a) and 15 U.S.C. 1121(a).

7.  This Court has personal jurisdiction over Jersey Dental because Jersey Dental regularly does and solicit business in New York and in this judicial district. As further alleged below, Jersey Dental markets, offers for sale, sells, and/or distributes goods under Ivoclar Inc.'s trademarks, or facilitates and supports such activity, including to consumers residing in New York and in this judicial district, without authorization or approval from the Plaintiffs.

8.  Venue in this district is proper under 28 U.S.C. Sections 1400 and 1391 because Jersey Dental is subject to personal jurisdiction in this District. Jersey Dental also has

- 3 -

committed acts of trademark infringement and patent infringement in this district.

## FACTS

### I.      Ivoclar Inc.'s Marks

9.      Ivoclar Inc. owns the trademark "E.MAX" for use on dental ceramics (the "E.MAX Mark").

10.     Ivoclar Inc. obtained a federal trademark registration for the E.MAX Mark under U.S. Registration No. 4,563,807 (the "E.MAX Registration") on July 8, 2014. A copy of the E.MAX Registration is attached as **Exhibit 1**.

11.     Ivoclar Inc. has used the E.MAX Mark in U.S. commerce since at least as early as October 2005, and it has the exclusive right to use the E.MAX Mark, nationwide, on its dental ceramic products.

12.     Ivoclar Inc. owns a trademark for "IPS E.MAX" for use on, among other things, dental veneers, ingots made of resin, metal, or ceramics for dental use (the "IPS E.MAX Mark").

13.     Ivoclar Inc. obtained a federal trademark registration for the IPS E.MAX Mark under U.S. Registration No. 3,251,293 (the "IPS E.MAX Registration") on June 12, 2007. A copy of the IPS E.MAX Registration is attached as **Exhibit 2**.

14.     Ivoclar Inc. has used the IPS E.MAX Mark in U.S. commerce since at least as early as November 14, 2005, and it has the exclusive right to use the IPS E.MAX Mark, nationwide, on its dental ceramic products.

15. Ivoclar Inc. owns a trademark for "IPS E.MAX CAD" for use on, among other things, dental ceramics (the "IPS E.MAX CAD Mark").

16. Ivoclar Inc. obtained a federal trademark registration for the IPS E.MAX CAD Mark under U.S. Registration No. 3,375,037 (the "IPS E.MAX CAD Registration") on January 29, 2008.  A copy of the IPS E.MAX CAD Registration is attached as **Exhibit 3**.

17. Ivoclar Inc. has used the IPS E.MAX CAD Mark in U.S. commerce since at least as early as October 31, 2005, and it has the exclusive right to use the IPS E.MAX CAD Mark, nationwide, on its dental ceramic products.

18. Ivoclar Inc. owns a trademark for the color purple for use on dental ceramics (the "Purple Mark").

19. Ivoclar Inc. obtained a federal trademark registration for the Purple Mark under U.S. Registration No. 4,815,646 (the "Purple Registration") on September 22, 2015.  A copy of the Purple Registration is attached as **Exhibit 4**.

20. Ivoclar Inc. has used the Purple Mark in U.S. commerce since at least as early as November 2005, and it has the exclusive right to use the Purple Mark, nationwide, on its dental ceramic products.

21. Ivoclar Inc. has invested substantial resources to develop, grow, and promote its E.MAX Mark, IPS E.MAX Mark, and IPS E.MAX CAD Mark (collectively, the "E.MAX Marks").  As a direct result of Ivoclar Inc.'s continuous and exclusive use of the E.MAX Marks, they have become widely known and recognized in the industry as Ivoclar Inc.'s trademarks and as strong indicators of the source of Ivoclar Inc.'s goods.

22. Ivoclar Inc. has invested substantial resources to develop, grow, and promote its Purple Mark. As a direct result of Ivoclar Inc.'s continuous and exclusive use of the Purple Mark, it has become widely known and recognized in the industry as Ivoclar Inc.'s trademark and as a strong indicator of the source of Ivoclar Inc.'s goods.

23. By virtue of Ivoclar Inc.'s methods, the duration and scope of its use of the E.MAX Marks and the Purple Mark (collectively, the "Ivoclar Marks"), the expenditure of considerable sums for promotional activities, and by virtue of the excellence of its goods, Ivoclar Inc. has obtained for the Ivoclar Marks a most valuable reputation. The Ivoclar Marks, and the respective goods, have gained substantial recognition and goodwill in the marketplace.

24. The Ivoclar Marks are strong and distinctive and designate Ivoclar Inc. as the source of all goods and services advertised, marketed, sold, or used in connection with those marks in the United States. In addition, by virtue of Ivoclar Inc.'s use of the Purple Mark in connection with its products, and its extensive marketing, advertising, promotion, and sale of its products under that mark, the Purple Mark has acquired secondary meaning whereby the consuming public of this District, the State of New York, and the United States associate the Purple Mark with a single source of products and services.

25. Ivoclar Inc. is the senior user of the Ivoclar Marks because it has used and continues to use those marks in interstate commerce prior to any use by Jersey Dental of these marks.

## II. The Plaintiffs' Patents

26. On October 19, 2010, the United States Patent and Trademark Office (the "USPTO") issued U.S. Patent No. 7,816,291 (the " ' 291 Patent"), entitled "Lithium Silicate Materials." A copy of the '291 Patent is attached as **Exhibit 5.**

27. Ivoclar AG is the owner of all rights, title, and interest in the '291 patent.

28. Ivoclar Inc. is an exclusive licensee of the '291 Patent, with the right to enforce the '291 Patent. Ivoclar Inc. acts as the exclusive marketer and seller of products that embody the '291 Patent in the United States.

29. On May 21, 2013, the USPTO issued U.S. Patent No. 8,444,756 (the "'756 Patent"), entitled "Lithium Silicate Materials." A copy of the '756 Patent is attached as **Exhibit 6**.

30. Ivoclar AG is the owner of all rights, title, and interest in the '756 Patent.

31. Ivoclar Inc. is an exclusive licensee of the '756 Patent, with the right to enforce the '756 Patent. Ivoclar Inc. acts as the exclusive marketer and seller of products that embody the '756 Patent in the United States.

32. On November 1, 2011, the USPTO issued U.S. Patent No. 8,047,021 (the "'021 Patent"), entitled "Lithium Silicate Materials." A copy of the '021 Patent is attached as **Exhibit 7**.

33. Ivoclar AG is the owner of all rights, title, and interest in the '021 Patent.

34. Ivoclar Inc. is an exclusive licensee of the '021 Patent, with the right to enforce the '021 Patent. Ivoclar Inc. acts as the exclusive marketer and seller of products that embody the '021 Patent in the United States.

### III. Jersey Dental's Trademark and Patent Infringement

35. The Plaintiffs, either by themselves, or by and through authorized third parties, manufacture, market, offer for sale, sell, and distribute goods under the Ivoclar Marks within the United States ("Approved Goods") and abroad ("Foreign Approved Goods"). The Plaintiffs control the quality of such Approved Goods and Foreign Approved Goods through their established quality control procedures.

36. Several goods marketed and sold by Jersey Dental under the Ivoclar Marks are acquired by Jersey Dental from foreign markets or from third parties outside of the United States, and then imported, marketed, offered for sale, sold, and/or distributed under the Ivoclar Marks within the United States by Jersey Dental without the Plaintiffs' permission or approval ("Unauthorized Goods").

37. The Unauthorized Goods are not, and have never been, intended by the Plaintiffs to be marketed, offered for sale, sold, and/or distributed in the United States. Such Unauthorized Goods have not been approved by the Plaintiffs for import into, or for sale or distribution in, the United States.

38. Such Unauthorized Goods are materially different from the Approved Goods in several aspects.

39. Unauthorized Goods offered for sale and sold by Jersey Dental under the E.MAX Marks and the Purple Mark are materially different from Approved Goods under these marks because, without limitation:

(1) Ivoclar Inc. provides product warranties and customer and product education and support programs for all Approved Goods sold under the E.MAX Marks and the Purple Mark. However, the Unauthorized Goods sold under these marks are not covered by such product warranties or customer and product education and support programs, and such warranties and programs are not available to purchasers of these Unauthorized Goods;

(2) Unauthorized Goods under these marks are advertised and sold at prices that are significantly lower than those for Approved Goods under these marks;

(3) Ivoclar Inc. is deprived of its right and ability to exercise appropriate quality control over these Unauthorized Goods, including with respect to seeking appropriate approvals from U.S. governmental, administrative, and regulatory bodies, such as the Food and Drug Administration ("FDA"), and monitoring for compliance with Ivoclar Inc.'s shipping, handling, and storage processes and procedures, and other established quality control procedures; and

(4) These Unauthorized Goods have not been approved by the FDA for sale and use in, or import into, the United States.

40. Products sold under the E.MAX Marks are covered by the '291,'756, and '021 Patents.

41. Under *Lexmark Int'l., Inc. v. Impression Prods., Inc.*, a foreign sale of a U.S. patented article does not exhaust the patentee's U.S. patent rights. 2016 U.S. App. LEXIS 2452, 136-137 (Fed. Cir. Feb. 12, 2016).

42. Accordingly, Jersey Dental is infringing the '291,'756, and '021 Patents by importing, offering for sale, and selling into an within the United States E.MAX products that are imported from foreign markets without the Plaintiffs' consent or permission.

**First Claim for Relief Against Jersey Dental**
**(Trademark Infringement (15 U.S.C. Section 1114))**

43. The Plaintiffs repeat the allegations in paragraphs 1-42.

44. Jersey Dental has infringed the Ivoclar Marks by importing, marketing, offering for sale, selling, and/or distributing Unauthorized Goods that are materially different from Approved Goods without permission or authorization from the Plaintiffs.

45. Jersey Dental does not have authorization, license, or permission from the Plaintiffs to market, offer for sale, sell, and/or distribute the Unauthorized Goods or otherwise use the Ivoclar Marks.

46. Jersey Dental's use of the Ivoclar Marks in connection with the importing, marketing, offering for sale, selling, and/or distributing of Unauthorized Goods is likely to cause confusion in the marketplace, including as to the quality and source of such Unauthorized Goods, because such marks are identical to the Ivoclar Marks used on Approved Goods, and are used by Jersey Dental on goods identical in kind to, but materially different from, the Approved Goods.

47. As a direct and proximate result of Jersey Dental's wrongful conduct, Ivoclar Inc. has been, and will continue to be, damaged.

48. Unless an injunction is issued precluding any continuing or future use by Jersey Dental of the Ivoclar Marks on the Unauthorized Goods, such continuing or future use is likely to continue to cause confusion, mistake, or deception as to the source or origin of the Unauthorized Goods, or as to the affiliation, association, or sponsorship by the Plaintiffs of Jersey Dental and/or the Unauthorized Goods.

49. Upon information and belief, Jersey Dental had actual knowledge of the Ivoclar Marks. Jersey Dental was on constructive notice of these marks based on the federal registrations for the marks and Ivoclar Inc.'s use of the marks in interstate commerce. As a result, Jersey Dental's unauthorized use of such marks on, and in connection with, the importing, marketing, offering for sale, selling, and/or distributing of, the Unauthorized Goods, has been knowing, intentional, and willful.

50. Jersey Dental's activities have caused, and will continue to cause, irreparable harm to Ivoclar Inc., for which there is no adequate remedy at law, in that: (i) the Ivoclar Marks comprise unique and valuable property rights; (ii) Jersey Dental's infringement interferes with and impinges on Ivoclar Inc.'s goodwill and customer relationships and will substantially harm Ivoclar Inc.'s reputation as a source of high-quality goods and services; and (iii) Jersey Dental's wrongful conduct, and the damages resulting to Ivoclar Inc., are continuing. Accordingly, Ivoclar Inc. is entitled to injunctive relief.

51. Pursuant to 15 U.S.C. Section 1117(a), Ivoclar Inc. is entitled to an order: (i) requiring Jersey Dental to account for any and all profits derived from their actions, to be

increased in accordance with applicable provisions of law; and (ii) awarding all damages sustained by Ivoclar Inc. that were caused by Jersey Dental's conduct.

52. Jersey Dental's actions make this an exceptional case under 15 U.S.C. Section 1117(a), and Ivoclar Inc. is entitled to an award of attorneys' fees.

**Second Claim for Relief Against Jersey Dental**
**(Unfair Competition/False Designation of Origin (15 U.S.C. Section 1125(a))**

53. The Plaintiffs repeat the allegations set forth in paragraphs 1-52.

54. The Ivoclar Marks are strong and distinctive and designate Ivoclar Inc. as the source of all goods and services advertised, marketed, sold, or used in connection with those marks in the United States. In addition, by virtue of Ivoclar Inc.'s use of the Purple Mark in connection with its products, and its extensive marketing, advertising, promotion, and sale of its products under that mark, the Purple Mark has acquired secondary meaning whereby the consuming public of this District, the State of New York, and the United States associate the Purple Mark with a single source of products and services.

55. Ivoclar Inc. is the senior user of the Ivoclar Marks, because it began using, and continues to use, those marks in interstate commerce prior to any use by Jersey Dental of the Ivoclar Marks.

56. Upon information and belief, Jersey Dental has actual knowledge of the Ivoclar Marks. Jersey Dental was on constructive notice of these marks based on the federal registrations for the marks and Ivoclar Inc.'s use of the marks in interstate commerce. As a result, Jersey Dental's unauthorized use of such marks on, and in connection with, the importing,

marketing, offering for sale, selling, and/or distributing of, the Unauthorized Goods, has been knowing, intentional, and willful.

57. Upon information and belief, through their unauthorized use of the Ivoclar Marks, Jersey Dental intended to, and did in fact, confuse and mislead consumers into believing, and misrepresented and created the false impression, that the Plaintiffs somehow authorized, originated, sponsored, approved, licensed, or participated in Jersey Dental's use of the Ivoclar Marks.

58. In fact, there is no connection, association, or licensing relationship between the Plaintiffs and Jersey Dental, nor have Plaintiffs ever authorized, licensed, or given permission to Jersey Dental to use the Ivoclar Marks.

59. Upon information and belief, Jersey Dental's unauthorized use of the Ivoclar Marks will likely cause confusion as to the origin, sponsorship, approval, and authenticity of the Unauthorized Goods, and any related services, and will likely cause others to believe mistakenly that there is a relationship, affiliation, connection, or association between Jersey Dental and the Plaintiffs.

60. As a direct and proximate result of Jersey Dental's wrongful conduct, Ivoclar Inc. has been, and will continue to be, damaged.

61. Jersey Dental's actions constitute false designation of origin and unfair competition.

62. Jersey Dental's activities have caused, and will continue to cause, irreparable harm to Ivoclar Inc., for which there is no adequate remedy at law, in that: (i) the

Ivoclar Marks comprise unique and valuable property rights; (ii) Jersey Dental's infringement interferes with and impinges on Ivoclar Inc.'s goodwill and customer relationships and will substantially harm Ivoclar Inc.'s reputation as a source of high-quality goods and services; and (iii) Jersey Dental's wrongful conduct, and the damages resulting to Ivoclar Inc., are continuing. Accordingly, Ivoclar Inc. is entitled to injunctive relief.

63.     Pursuant to 15 U.S.C. Section 1117(a), Ivoclar Inc. is entitled to an order: (i) requiring Jersey Dental to account for any and all profits derived from their actions, to be increased in accordance with applicable provisions of law; and (ii) awarding all damages sustained by Ivoclar Inc. that were caused by Jersey Dental's conduct.

64.     Jersey Dental's actions make this an exceptional case under 15 U.S.C. Section 1117(a), and Ivoclar Inc. is entitled to an award of attorneys' fees.

### Third Claim for Relief Against Jersey Dental
### (False Advertising (15 U.S.C. Section 1125(a)))

65.     The Plaintiffs repeat the allegations set forth in paragraphs 1-64.

66.     Jersey Dental advertises Unauthorized Goods under the Ivoclar Marks. Such advertisements and the unauthorized use of the Ivoclar Marks are likely to mislead and confuse consumers as to the origin, sponsorship, approval, and authenticity of the Unauthorized Goods.

67.     Such advertisements and the unauthorized use of the Ivoclar Marks are likely to mislead and confuse consumers as to the nature, characteristics, qualities, or geographic origin of the Unauthorized Goods.

68. Pursuant to 15 U.S.C. Section 1117(a), Ivoclar Inc. is entitled to an order: (i) requiring Jersey Dental to account for any and all profits derived from their actions, to be increased in accordance with applicable provisions of law; and (ii) awarding all damages sustained by Ivoclar Inc. that were caused by Jersey Dental's conduct.

69. Jersey Dental's actions make this an exceptional case under 15 U.S.C. Section 1117(a), and Ivoclar Inc. is entitled to an award of attorneys' fees.

### Fourth Claim for Relief Against Jersey Dental
### (Common Law Trademark Infringement)

70. The Plaintiffs repeat the allegations set forth in paragraphs 1-69.

71. Jersey Dental's unauthorized use of the Ivoclar Marks in U.S. commerce constitutes common law trademark infringement.

72. Upon information and belief, Jersey Dental's unlawful actions have been willful, making this an exceptional case.

73. As a result of Jersey Dental's unlawful conduct, Ivoclar Inc. has suffered damages, and will suffer immediate and irreparable injury unless Jersey Dental is enjoined from their unlawful activities; therefore, Ivoclar Inc. is without an adequate remedy at law.

### Fifth Claim for Relief Against Jersey Dental
### (Infringement of the '291 Patent)

74. The Plaintiffs repeat the allegations set forth in paragraphs 1-73.

75. On October 19, 2010, the USPTO issued the '291 Patent.

76. Ivoclar AG is the owner of all rights, title, and interest in the '291 Patent.

77. Ivoclar Inc. is an exclusive licensee of the '291 Patent, with the right to enforce the '291 Patent. Ivoclar Inc. acts as the exclusive marketer and seller of products that embody the '291 Patent in the United States.

78. Products sold under the E.MAX Marks are covered by the '291 Patent. E.MAX products fall within the scope of one or more claims of the '291 Patent

79. Jersey Dental is infringing the '291 Patent by importing, offering for sale, and/or selling E.MAX products in the U.S. without the Plaintiffs' consent or permission.

### Sixth Claim for Relief Against Jersey Dental
### (Infringement of the '756 Patent)

80. The Plaintiffs repeat the allegations set forth in paragraphs 1-79.

81. On May 21, 2013, the USPTO issued the '756 Patent.

82. Ivoclar AG is the owner of all rights, title, and interest in the '756 patent.

83. Ivoclar Inc. is an exclusive licensee of the '756 Patent, with the right to enforce the '756 Patent. Ivoclar Inc. acts as the exclusive marketer and seller of products that embody the '756 Patent in the United States.

84. Products sold under the E.MAX Marks are covered by the '756 Patent. E.MAX products fall within the scope of one or more claims of the '756 Patent.

85. Jersey Dental is infringing the '756 Patent by importing, offering for sale, and/or selling E.MAX products in the U.S. without the Plaintiffs' consent or permission.

### Seventh Claim for Relief Against Jersey Dental
### (Infringement of the '021 Patent)

86. The Plaintiffs repeat the allegations set forth in paragraphs 1-85.

87. On November 1, 2011, the USPTO issued the '021 Patent.

88. Ivoclar AG is the owner of all rights, title, and interest in the '021 patent.

89. Ivoclar Inc. is an exclusive licensee of the '021 Patent, with the right to enforce the '021 Patent. Ivoclar Inc. acts as the exclusive marketer and seller of products that embody the '021 Patent in the United States.

90. Products sold under the E.MAX Marks are covered by the '021 Patent. E.MAX products fall within the scope of one or more claims of the '021 Patent

91. Jersey Dental is infringing the '021 Patent by importing, offering for sale, and/or selling E.MAX products in the U.S. without the Plaintiffs' consent or permission.

### Jury Demand

92. The Plaintiffs demand trial by jury on all matters triable by jury.

**WHEREFORE**, Plaintiffs are entitled to judgment for the following relief:

(1) declaring that Jersey Dental has infringed the Ivoclar Marks and the Plaintiffs' patents;

(2) granting an injunction, precluding Jersey Dental, its officers, directors, agents, servants, employees, attorneys, subsidiaries, affiliates, and all those acting in concert with them, from infringing the Ivoclar Marks and the Plaintiffs' patents;

(3)  ordering an accounting for damages arising from Jersey Dental's acts of trademark and patent infringement;

(4)  awarding damages, with interest;

(5)  finding that Jersey Dental's trademark and patent infringement is willful, that this is an exceptional case, and awarding special damages and reasonable attorneys' fees to the Plaintiffs; and

(6)  awarding such further relief as this Court deems proper.

Dated:  March 22, 2017

**HODGSON RUSS LLP**
*Attorneys for Ivoclar Vivadent AG and Ivoclar Vivadent Inc.*

By:  s/Robert J. Fluskey, Jr.
      Robert J. Fluskey, Jr.
      rfluskey@hodgsonruss.com
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York  14202
Telephone:  (716) 856-4000